IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

CANDY WORKMAN,
*individually and on behalf of
the class members described below*,

    Plaintiff,

 -v-

PRIORITY HEALTH
MANAGED BENEFITS, INC.
and JOHN DOES 1-10

    Defendants.

## COMPLAINT – CLASS ACTION

### INTRODUCTION

*Plaintiff is not aware of any related cases.*

1. Plaintiff Candy Workman brings this action against Priority Health Managed Benefits, Inc. ("Priority Health") and John Does 1-10 to stop Defendants' practice of making phone calls to cellular telephones using an automated telephone dialing system, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct.

### JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction under 28 U.S.C.

§§ 1337 (commerce) and 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

3. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants are located in this District.

## PARTIES

4. Plaintiff Candy Workman is an individual who resides in West Virginia.

5. Defendant Priority Health Managed Benefits, Inc. is a corporation organized under the law of Michigan with principal offices at 1231 E. Beltline Ave. NE, Grand Rapids, MI 49525.

6. Defendants John Does 1-10 are other natural or artificial persons that were involved in placing unsolicited, automated, pre-recorded or artificial voice telemarketing calls by or on behalf of Defendant Priority Health Managed Benefits, Inc. Plaintiff does not know who they are.

## THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227

7. Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243 (Dec. 20, 1991); *see also Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. Consumer complaints about this conduct have only increased since then. "If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today.

10. The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first five months of 2017 and about 5.3 million in 2016. The FCC has stated that it gets more than 200,000 complaints about unwanted telemarketing calls each year. These complaints are on top of the complaints each state AG's office receives and also do not include the millions of unreported calls.

11. In an effort to curb these unwanted calls, the TCPA regulates, inter alia, the

use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls to any cellular telephone number or deliver a prerecorded message. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers or a pre-recorded voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12.     In 2012, the FCC prohibited "any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). This prior express written consent requirement became effective on October 16, 2013.

## FACTS

13.     Plaintiff subscribes to cellular telephone number XXX-XXX-6987.

14.     Priority Health or third parties acting on behalf of Priority Health authorized or used automated equipment to place large numbers of telemarketing calls. The equipment has the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. The equipment delivers a pre-recorded message.

15.     On March 7, 2019, Plaintiff received an automated call from Priority Health

or third parties acting on behalf of Priority Health. The number appearing on her Caller ID was 954-519-2593. Upon answering, Plaintiff heard a pre-recorded message identifying the caller as the "National Enrollment Center" and directing the called party to press a button in order to continue. Upon doing so, a live person came on the line, identified as "Donna." Donna indicated that she was calling concerning Plaintiff's life insurance and would connect her to a licensed insurance agent.

16. Plaintiff was then connected with a second live person who identified himself as "Marcus." Marcus stated that he was calling on behalf of Priority Health Insurance and discussed several insurance plans with Plaintiff. Plaintiff declined to proceed at the time and was provided a call back number of 877-836-0556 for the National Enrollment Center.

17. On March 13, 2019. Plaintiff received a second call from or on behalf of Defendants. The number appearing on her Caller ID was 304-486-9182. Plaintiff was unable to answer the March 13, 2019 call.

18. On March 18, 2019. Plaintiff received a third call from or on behalf of Priority Health. The number appearing on her Caller ID was 304-486-9182. Upon answering the call, a prerecorded message played directing Plaintiff to press # in order to continue with the call.

19. Plaintiff was then connected with a live person who identified himself as "Frank from Individual Health Insurance." Upon inquiry, the caller further identified himself as Frank Mendez, a licensed insurance agent with over 3 ½ years experience calling on behalf of Priority Health Insurance. Plaintiff declined to proceed at the time and was provided a call back number of 877-836-0556.

20. Plaintiff may have received other unsolicited, automated, pre-recorded or artificial voice telemarketing calls placed by or on behalf of Defendants.

21. Plaintiff has not consented to the receipt of any calls from Defendants.

22. Plaintiff had not provided her number to Defendants prior to the call.

23. By calling Plaintiff, Defendants caused Plaintiff and the putative class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, consumption of electricity in cost per-kilowatt required to recharge the cell phones, consumption of money or purchased blocks of calls, and wear and tear on telephone equipment. The calls took time to receive and Plaintiff's statutory right of privacy was invaded.

24. The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of*

*1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶165) (2003).

25. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case.

26. The calls were made to consumers who never requested to receive them, never engaged in any interaction with Defendants and are made on a repeat basis without consent.

27. Defendants either negligently or willfully violated the rights of Plaintiff and other recipients in placing the calls.

### COUNT I – TCPA

28. Plaintiff incorporates by reference paragraphs 1-27.

29. Defendants made unsolicited automated or pre-recorded or artificial voice calls to cellular telephone numbers belonging to Plaintiff and other members of the class without their prior express consent.

30. By making unsolicited calls to Plaintiff and the class members, using an automated dialing system or pre-recorded or artificial voice calls and without prior express consent, Defendants violated 47 U.S.C. §227(b)(1)(A)(iii).

31. Plaintiff and each class member are entitled to statutory damages.

32. Plaintiff and the putative class members suffered actual damages in the form

-7-

of monies paid to receive the unsolicited, automated robocalls and their statutory right of privacy were invaded.

## CLASS ALLEGATIONS

33.    Plaintiff brings this claim pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and 23(b)(3) on behalf of a class.

34.    The class consists of: (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) received calls placed by or on behalf of Defendant Priority Health, Inc., on their cell phones, (d) placed using an automated dialer or a pre-recorded or artificial voice.

35.    The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, based on the fact that Defendants used automated equipment to deliver a pre-recorded or artificial voice message, Defendants have made calls using such equipment to more than 40 persons who fall into the definition of the class. Class members can be identified through Defendants or their agents' records.

36.    Plaintiff's claims are typical of the claims of other members of the class, in that Plaintiff and the class members sustained damages arising out of Defendants' uniform wrongful conduct, including the making of unsolicited telephone calls.

37.     Plaintiff will fairly and adequately represent and protect the interests of the class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

38.     There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. These include:

    a.  Whether the equipment Defendants used to place the calls in question was an automatic telephone dialing system as defined by the TCPA;

    b.  Whether Defendants placed calls that delivered a pre-recorded or artificial voice message;

    c.  Whether Defendants systematically made automated calls to persons without prior express consent to receive such telephone calls;

    d.  Whether class members are entitled to treble damages based on the willfulness of Defendants' conduct.

39.     Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual

prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

    a.    Statutory damages, 47 U.S.C. § 227(b)(3);

    b.    An injunction restraining the conduct complained of;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems proper.

                Respectfully submitted,

            By:    s/ Daniel A. Edelman
                      Daniel A. Edelman
                      Cathleen M. Combs
                      EDELMAN, COMBS, LATTURNER

                                                                                 & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
Email: courtecl@edcombs.com

s/Adam G, Taub
Adam G. Taub (P48703)
ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
(248) 746-3790
adamgtaub@clgplc.net

Dated: November 18, 2020

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

>*/s/ Daniel A. Edelman*
>Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that any such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

/s/*Daniel A. Edelman*
Daniel A. Edelman